UNITED STATES v. LANG (No. 1143).[1]

SAMPLES NOT SHOWN TO BE TAKEN FROM THE IMPORTATION.

It was not shown that the sample used by the Government was a part of the importation. The evidence here makes out a prima facie case for the importer and is sufficient to overcome the presumption of correctness attaching to the collector's decision. The merchandise was dutiable as rapeseed oil.

United States Court of Customs Appeals, November 18, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31592 (T. D. 33263):

[Affirmed.]

*William L. Wemple*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, of counsel), for the United States.

*Brown & Gerry* for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise imported at the port of New York and returned by the appraiser as a "mixture of oils" was assessed for duty by the col-

---

lector of customs at 25 per cent ad valorem under the provisions of paragraph 3 of the tariff act of 1909, which paragraph reads as follows:

3. Alkalies, alkaloids, *distilled oils, essential oils, expressed oils, rendered oils, and all combinations of the foregoing,* and all chemical compounds, mixtures and salts, and all greases, not specially provided for in this section, *twenty-five per centum ad valorem;* chemical compounds, mixtures and salts containing alcohol or in the preparation of which alcohol is used, and not specially provided for in this section, fifty-five cents per pound, but in no case shall any of the foregoing pay less than twenty-five per centum ad valorem.

The importer claimed that the merchandise was not a mixture of oils, but rapeseed oil, and therefore protested that the importation was dutiable not at 25 per cent ad valorem but at 10 cents per gallon under that part of paragraph 37 of said act which reads as follows:

37. * * * Rapeseed oil, ten cents per gallon.

The Board of General Appraisers sustained the protest and the Government appealed.

The assessment of the collector was evidently induced by the report of the appraiser, which in effect set out that the importation was a combination of oils, 72 per cent of which combination was castor oil. The report of the appraiser was based on the report of the chemist stationed at the appraiser's stores, which report was in its turn founded on an analysis of a sample of oil which had been sent to him by the customs examiner. The examiner, however, was unable to say whether the sample was taken from the importation, and the sampler who took the sample was not produced as a witness. It is apparent, therefore, that the sample examined by the chemist was not connected with the importation and that the verity of the sample and the validity of the assessment are supported solely by the presumption of correctness which obtains in favor of the collector's decision.

To overcome this presumption the importer on his part introduced the testimony of Paul O. Hoerning, from which it appears that the merchandise was purchased on sample by the Oil Products Co. as blown rapeseed oil, and that the goods delivered to the company not only conformed to the sample on which the purchase was made, but were subsequently sold as blown rapeseed oil. This witness said that he had handled rapeseed oil for a period of eight or nine years; that he was familiar with its physical characteristics, and that its identity was ordinarily established by its color, odor, and specific gravity. The witness testified that he applied all three tests to the importation and that his experience and the result of his tests satisfied him that the importation was not a mixed oil, but a straight rapeseed oil.

The evidence on the part of the importer leaves something to be desired, and we would have been better satisfied as to the character of the importation had its true nature been determined by chemical analysis. Still we can not say that the tests applied by Hoerning were insufficient for the purpose to which they were directed or that the evidence was insufficient to sustain the finding of the board that

the merchandise in controversy was rapeseed oil, as claimed in the protest. At the time he gave his testimony Hoerning had dealt in rapeseed oil for eight or nine years. He knew its odor and color by experience. He applied the tests ordinarily employed to identify rapeseed oil, and on the faith of those tests and his experience he testified that the oil was a "straight" rapeseed oil. Such a state of facts was enough, in our opinion, to make out a prima facie case for the importer and sufficient to overcome the presumption of correctness attaching to the collector's decision.

The decision of the Board of General Appraisers is therefore *affirmed.*