(C. D. 772)

PACIFIC VEGETABLE OIL CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 22, 1943)

*Lawrence & Tuttle (Charles F. Lawrence* and *George R. Tuttle* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*James F. Donnelly, Frank X. O'Donnell, Jr.,* and *Robert C. O'Grady,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover a part of the tax assessed on certain sesame seeds at the rate of 1.18 cents per pound under the *eo nomine* provision therefor in section 601 (c) (8) of the Revenue Act of 1932, as amended by section 702 (8) (d) of the Revenue Act of 1938, 52 Stat. 447, 569, T. D. 49643. Counsel for both parties refer to this provision in their briefs as "I. R. C. 2491–d." The plaintiff claims that the tax should be assessed on the net weight of the sesame seeds at 1.18 cents per pound and should not have been assessed at that rate on the foreign substances mixed with the sesame seed, which foreign substances should have been classified as "screenings" and assessed with duty at 5 per centum ad valorem under paragraph 731 of the Tariff Act of 1930 by virtue of the provisions in section 508 of said act. The rate of duty on screenings in paragraph 731 is 10 per centum ad valorem but that rate was reduced to 5 per centum ad valorem in the trade agreement with Canada (T. D. 49752). Consumption entry of the merchandise was filed on December 6, 1939,

which is subsequent to January 1, 1939, the effective date of that trade agreement.

The case was called for trial at San Francisco and the plaintiff's first witness was Mr. Edwin S. McElligott who is a chemist with 30 years of experience and is employed by Curtis & Tompkins of San Francisco. The witness testified that in December 1939 he was advised by the Pacific Vegetable Oil Corporation, the importer in this case, that a sample of sesame seed from a shipment on the steamship *Eidsvoid* would be sent to him and that subsequently he received a sample of such seed from the Gooch Laboratories of Los Angeles. He produced a can of seed which was admitted in evidence and marked exhibit 1 subject to proof to be introduced later showing that it came out of the shipment herein involved.

The witness testified that he examined approximately 20 grams of the seed from the can and found that it contained 97.83 per centum of clean sesame seed and 2.17 per centum of dirt and other foreign matter, such as foreign seed and chaff. On cross-examination, he testified that he examined more than one of the 20-gram portions; that he took the whole can of seed and divided it in half through a divider and then took that half and divided it again and continued to divide the remainder until he was down to 20 grams for each portion.

The next witness called by the plaintiff was Mr. Peter John Angius who had been connected with the Pacific Vegetable Oil Corporation for about 12 years. He testified that he was familiar with the business of milling and was familiar with screenings, which consist of dust, dirt, chaff, and foreign seeds other than the seeds they are operating upon; that dirt, chaff, and foreign seeds have always been known as screenings in the milling business. On cross-examination, he testified that screenings of sesame seed do not include small or defective grains screened out; that the sesame seeds are usually whole seeds.

The case was then transferred to Los Angeles at which port the plaintiff called Mr. John Campbell who is an inspector for the George Gooch Laboratories. He testified that on December 19, 1939, at the request of Curtis & Tompkins of San Francisco, he drew a sample from 1,200 bags of sesame seed at the Globe Grain & Milling Co.'s Vernon Avenue plant; that he received a telephone call from the office of the Globe Grain & Milling Co. to the effect that they had 1,200 bags of sesame seed belonging to the Pacific Vegetable Oil Corporation who wanted him to sample it; that he went to the warehouse of the Globe Grain & Milling Co. and a shipping clerk or delivery clerk pointed out the shipment and he sampled it, but the witness did not recall how the bags were marked; that he took the sample to the laboratory and split it in a seed splitter and sent a 1-gallon can of the seed to Curtis & Tompkins in San Francisco, the can containing a label bearing the details of the shipment; that Curtis & Tompkins

was billed for the sampling, but the bill was made out by a stenographer who made it from the tag and did not see the shipment. This invoice, which is a carbon copy, was received in evidence and marked exhibit 2.

The witness testified further that the bags of seed he sampled were piled in tiers 4 bags high and that he used an official grain sampler which extracts 4 or 5 grams from each bag; that he went over the entire pile and sampled 120 bags, which was 10 per centum of the shipment; that in dividing the sample they use an apparatus with a hopper, the sample being put in the hopper, spread out and distributed equally and divided into halves.

On cross-examination the witness testified that the bags contained 165 pounds each; that he sampled for the Curtis & Tompkins Co. and had nothing directly to do with the importer; that the bags of seed he sampled were not identified in any way other than being pointed out to him by the person in the warehouse; that he used a sampler which is about 15 inches long which he inserted in each bag, sometimes at the side, sometimes at the bottom, and sometimes at the top.

In order to show that the witness was mistaken in stating on cross-examination that he had nothing directly to do with the importer, counsel for the plaintiff produced a letter, dated December 3, 1941, written by the Pacific Vegetable Oil Corporation, addressed to the Geo. W. Gooch Laboratories, Ltd., and requested that it be admitted in evidence and marked exhibit 3. Counsel for the defendant objected to the receipt of this letter in evidence on the ground that it was a self-serving document written about 2 years after the arrival of the importation. The judge presiding at the trial sustained the objection and the letter was marked exhibit 3, for identification, exception being granted to plaintiff.

Counsel for the defendant moved to strike out all of witness Campbell's testimony on the ground that he had not connected the sample he took with the importation and the judge presiding at the trial stated that he would allow the testimony to stand subject to connection. The case was then continued at the request of counsel for the plaintiff.

At the trial on the adjourned date, the plaintiff called Mr. Ralph J. Steven who, at the time of importation of the merchandise herein involved, was in charge of the operation of the oil mill at the Globe Grain & Milling Co. He testified that during the first part of December 1939, the Globe Grain & Milling Co. received 1,200 bags, more or less, of sesame seed from the Steamship *Eidsvoid* for the account of the Pacific Vegetable Oil Corporation; that he had the milling record made up at the time showing the date on which the seed was received. The witness referred to his records and testified that on or about December 6, 1939, his firm was in possession of 1,236 bags

of sesame seed, the property of Pacific Vegetable Oil Corporation; that his firm had possession of 2,919 other bags of sesame seed received from December 8 to December 15; that it was the practice of his' firm to keep various lots of merchandise separate. The witness produced a file of papers consisting of the following: A letter, dated December 6, 1939, from H. H. Macdonaugh & Co., a customs broker, notifying his firm that 1,200 bags of sesame seed from the steamship *Eidsvoid* for the account of Pacific Vegetable Oil Corporation was being forwarded to his firm; a bill of lading by the Southern Pacific Lines covering the shipment, this freight bill containing the notation "checks total of 1,236 bags"; a letter, dated December 19, 1939, from the Pacific Vegetable Oil Corporation confirming the delivery of the sesame seed received on the steamship *Eidsvoid*; a carbon copy of a bill by the Globe Grain & Milling Co. to the Pacific Vegetable Oil Corporation, covering the charge for freight, handling, wharfage, and car loading; and a bill from the Southern Pacific Co. for freight charges. These documents were admitted in evidence and marked collective exhibit 4.

The witness testified further that he had no personal knowledge as to whether or not Mr. Campbell actually sampled the 1,200 bags of sesame seed covered by the importation herein involved and that his statements with regard to keeping different lots separate was based on the practice of his firm.

At the conclusion of the trial, counsel for the plaintiff moved that exhibit 3, for identification, be received in evidence and counsel for the defendant moved to strike out all of the testimony introduced on the ground that the plaintiff had failed to show that the bags of sesame seed actually sampled were from the shipment herein involved. The judge presiding at the trial reserved decision on these motions for the full division of the court.

We find that exhibit 3, for identification, is not pertinent to the issue herein involved and we are of opinion that it was properly rejected as evidence by the trial judge, exception being granted to counsel for the plaintiff.

We have reviewed the evidence in detail for the purpose of passing on the defendant's motion to strike out all of the evidence introduced on the ground that the sample, exhibit 1, was not shown to have been taken out of the shipment. The witness, Campbell, who drew the sample was unable to state how the bags were marked when he drew the sample. He relied solely on the shipping or delivery clerk in the warehouse of the Globe Grain & Milling Co. who pointed out to him the bags of sesame seeds said to be covered by the importation. The shipping or delivery clerk was not produced as a witness and there is nothing in the record positively to show that the sample was extracted from the imported merchandise, nor do the records in exhibit 4 establish this connecting link. The record shows that there

were 2,919 other bags of sesame seed in the warehouse at the time the sample was drawn and we are not convinced by the testimony that exhibit 1 is representative of the shipment in this case.

In the case of *United States* v. *Lang*, 4 Ct. Cust. Appls. 494, T. D. 33916, the Government introduced an analysis of a sample without connecting it with the shipment in the case and the court disregarded that analysis. The court said at page 495:

The assessment of the collector was evidently induced by the report of the appraiser, which in effect set out that the importation was a combination of oils, 72 per cent of which combination was castor oil. The report of the appraiser was based on the report of the chemist stationed at the appraiser's stores, which report was in its turn founded on an analysis of a sample of oil which had been sent to him by the customs examiner. The examiner, however, was unable to say whether the sample was taken from the importation, and the sampler who took the sample was not produced as a witness. It is apparent, therefore, that the sample examined by the chemist was not connected with the importation and that the verity of the sample and the validity of the assessment are supported solely by the presumption of correctness which obtains in favor of the collector's decision.

We hold that the evidence does not identify the sample, exhibit 1, as a part of the shipment herein involved. As that exhibit was admitted subject to being connected with the shipment, we hold that it should be stricken from the record, exception being granted to counsel for the plaintiff. The testimony of witness McElligott regarding the analysis he made of that sample is, therefore, immaterial and we direct that so much of his testimony as relates to his analysis of that sample be stricken out, exception being granted to counsel for the plaintiff. All other testimony in the record is admissible and we deny defendant's motion to strike out all of the evidence other than exhibit 1 and the testimony of witness McElligott in regard to his analysis thereof, exception being granted to counsel for the defendant.

As the record stands, there is nothing therein to overcome the presumption of correctness attaching to the collector's decision. The protest is overruled. Judgment will be entered in favor of the defendant.